OSCN Found Document:DOBSON TELEPHONE CO. v. STATE ex rel. OKLA. CORPORATION COMM.

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 DOBSON TELEPHONE CO. v. STATE ex rel. OKLA. CORPORATION COMM.
2017 OK CIV APP 16
392 P.3d 295
Case Number: 113362
Decided: 09/22/2016
Mandate Issued: 03/21/2017
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2017 OK CIV APP 16, 392 P.3d 295

 
APPROVED FOR PUBLICATION BY THE SUPREME COURT. 



IN THE MATTER OF THE APPLICATION OF DOBSON TELEPHONE COMPANY d/b/a MCLOUD TELEPHONE COMPANY FOR FUNDING FROM THE OKLAHOMA UNIVERSAL SERVICE FUND,

DOBSON TELEPHONE COMPANY d/b/a MCLOUD TELEPHONE COMPANY, Appellant,
v.
STATE OF OKLAHOMA ex rel. OKLAHOMA CORPORATION COMMISSION, Appellee.



APPEAL FROM AN ORDER OF THE CORPORATION COMMISSION



VACATED AND REMANDED FOR FURTHER PROCEEDINGS



Clyde A. Muchmore, William H. Hoch, Melanie Wilson Rughani, Mark S. Grossman, CROWE & DUNLEVY, A PROFESSIONAL CORPORATION, Oklahoma City, Oklahoma, and
Ron Comingdeer, Kendall Parrish, RON COMINGDEER & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Appellant
Robert J. Campbell, Jr., OKLAHOMA CORPORATION COMMISSION, Oklahoma City, Oklahoma, for Appellee




JOHN F. FISCHER, JUDGE:


¶1 Dobson Telephone Company, d/b/a McLoud Telephone Company, appeals a Final Order from the Oklahoma Corporation Commission denying Dobson's request for funding from the Oklahoma Universal Service Fund. Dobson sought reimbursement for costs incurred when it was required by the City of Oklahoma City to relocate its telecommunications lines to accommodate the widening of a city street. The Oklahoma Universal Service Fund was established pursuant to the Oklahoma Telecommunications Act of 1997 to make funds available to eligible telecommunications service providers like Dobson "to promote and ensure the availability of primary universal services, at rates that are reasonable and affordable . . . ." 17 O.S.2011 § 139.106(B). The Commission determined that reimbursement was not authorized unless the request to relocate had been made by a State agency. The Commission's interpretation defeats the purpose of the Fund. The Commission's Final Order is vacated, and this case is remanded for further proceedings.[1]

BACKGROUND

¶2 Dobson is a telecommunications provider serving nine exchanges and providing "general universal services" to approximately eleven thousand subscribers in central Oklahoma. To service its McLoud exchange, Dobson maintains telecommunications lines and other facilities in the right-of-way of Choctaw Road in the City of Oklahoma City. In September of 2012, the City notified Dobson that it would have to move its telecommunications lines and facilities to accommodate the widening of Choctaw Road. Dobson did so at a cost it represented to be $420,842.41. In December of 2013, Dobson submitted a request for reimbursement of that cost to the Oklahoma Universal Service Fund. [2] The Fund is administered by the Oklahoma Corporation Commission, and the Commission's Public Utility Division investigated Dobson's request. The Division determined that Dobson's request was governed by 17 O.S.2011 § 139.106(K)(1)(b). That section authorizes reimbursement for costs "required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law . . . ." According to the Division, this provision only applies to highway right-of-way relocation costs incurred at the direction of the Oklahoma Department of Transportation or a board of county commissioners. Consequently, the Division concluded that the Fund was not authorized to pay relocation costs required as a result of the City's relocation demand. The Division recommended denial of Dobson's request for reimbursement.[3]

¶3 Dobson filed a Request for Reconsideration. It attached a copy of Oklahoma City Ordinance No. 23499 § 50-13. The ordinance authorizes public utilities like Dobson to use City street rights-of-way for location of telecommunications lines but also requires relocation at the utility's expense when requested to do so by the City. After further briefing, the matter was argued to the Commission en banc. The Commission found: "The City, not the State, owns the right-of-way here, and the Legislature has not enacted either a general law or a local law that applies to relocation of [Dobson's] utility line." The Commission concluded that relocation pursuant to a municipal ordinance failed to show the requisite increase in costs "arising from federal or state action" for reimbursement from the Fund because a municipal ordinance is not a "state law."[4] The Commission adopted the Division's recommendation and denied Dobson's request for reimbursement from the Fund. The validity of the Commission's decision is dependent on the correctness of its interpretation of the statutory term "state law."

 

STANDARD OF REVIEW

¶4 The Oklahoma Constitution provides that appellate review of Corporation Commission orders "shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts." Okla. Const. art. 9, § 20. In other appeals, appellate review "shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence." Id. The issue in this appeal concerns only the Commission's legal interpretation of the Fund statute. Statutory interpretation presents a question of law. Troxell v. Okla. Dep't of Human Servs., 2013 OK 100, ¶ 4, 318 P.2d 206.

¶5 The issues raised in Dobson's appeal necessarily concern its property interest in reimbursement for expenses contemplated by the Fund statute, a fundamental interest protected by the Oklahoma and United States Constitutions. However, that characterization does not determine the applicable standard of review. Whether this court exercises its "independent judgment" as to the Commission's statutory interpretation or reviews that interpretation to determine whether it is "sustained by the law," our review is the same and no different than the de novo review we employ regarding issues of law in other contexts. Legal issues involving statutory interpretation are subject to de novo review. Heffron v. District Court of Oklahoma Cnty., 2003 OK 75, ¶ 15, 77 P.3d 1069. De novo review is non-deferential, plenary and independent. Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.1, 932 P.2d 1100.

ANALYSIS

¶6 Dobson appeals the denial of its request for reimbursement of the costs it incurred when it was required by the City of Oklahoma City to relocate its telecommunications lines. Disposition of Dobson's appeal requires the interpretation and construction of the Oklahoma Telecommunications Act of 1997, 17 O.S.2011 and Supp. 2014 §§ 139.101 to 139.110. The particular section at issue, which created the Oklahoma Universal Service Fund, authorizes reimbursement to providers like Dobson for certain cost increases. As identified by the parties, the relevant portion of that section provides:



K. 1. Each request for OUSF funding by an eligible [telecommunications provider] serving less than seventy-five thousand access lines shall be premised upon the occurrence of one or more of the following:

. . . .

b. if, as a result of changes required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences . . . an increase in costs, it shall recover the revenue reductions or cost increases from the OUSF . . . .



17 O.S.2011 § 139.106(K)(1)(b). According to the Commission, this provision would have permitted reimbursement had Dobson incurred the cost of relocating its telecommunications lines as the result of an order from the Department of Transportation or a board of county commissioners. But, because this relocation was required by a municipality, pursuant to a municipal ordinance, reimbursement was not authorized. The Commission reached this conclusion based on its narrow interpretation of the term "state law." We find the Commission's interpretation untenable.

I. The Commission's Interpretation

¶7 When the Commission received Dobson's request for reimbursement, its Public Utility Division investigated the application "to identify which government authority owned the road (i.e., State, County, or City)." The Division recommended denial of Dobson's request after determining that the City owned the road, and neither the Oklahoma Department of Transportation nor any board of county commissioners had ordered the relocation. The brief in support of the Division's recommendation states that the Division "lacks documentation to support or recognize a city municipality as a proper authority able to exercise state law. [The Division] does not believe [Dobson's] cost of the facilities relocation is eligible for reimbursement under 17 O.S. § 139.106(K)(1)(b)." The Commission adopted the Division's recommendation, finding that the term "state law" does not include municipal ordinances. That issue has not been previously decided by any Oklahoma court.

¶8 However, in August of 2015, after this case was decided, the Commission amended its Rules and Regulations related to the Telecommunications Act to add a definition of the word "state," a previously undefined term: "'State' means the State of Oklahoma." Oklahoma Administrative Code § 165:59-1-4 (amended at 32 Okla. Reg. 868, eff. August 27, 2015). Assuming that the Commission amended its rules to make clear that "state law" means state statute, and that relocation expenses resulting from municipal direction would not be reimbursed from the Fund, the Commission's action is relevant for two reasons.[5] First, it establishes that there is no "longstanding" interpretation of the Fund statute to which we can refer. See Schulte Oil Co., Inc. v. Okla. Tax Comm'n, 1994 OK 103, ¶ 4, 882 P.2d 658 (explaining the teaching of Oral Roberts Univ. v. Okla. Tax Comm'n, 1985 OK 97, 714 P.2d 1013, that "an agency's longstanding construction of an ambiguous or uncertain statute will not be disturbed without cogent reason"). Second, the word "state" is not capitalized in section 139.106(K)(1)(b) of the statute as it is in the Commission's rule. Although somewhat a matter of convention, common nouns are often capitalized when reference is made to a specific person or thing. The Commission's definition illustrates this point. Had the Legislature defined "state" as the Commission appears to have intended, we would be bound by that definition. See Oliver v. City of Tulsa, 1982 OK 121, ¶ 19, 654 P.2d 607. But no corresponding definition of "state" appears in the definitions section of the Telecommunications Act nor has any been added which conforms to the Commission's apparent position. See 17 O.S. Supp. 2014 § 139.102. "In the absence of specific statutory definition, we must assume that the law-making body intended a common word to be interpreted in its ordinary and usual parlance." Reynolds v. Porter, 1988 OK 88, ¶ 9, 760 P.2d 816. And, we are not bound by the Commission's recent interpretation. Even longstanding construction of a statute by the agency charged with its administration may be disregarded for "cogent reasons," for example, if the "construction is erroneous." Oral Roberts Univ. v. Oklahoma Tax Comm'n, 1985 OK 97, ¶ 12, 714 P.2d 1013 (citing McCain v. State Election Bd., 1930 OK 323, 289 P. 759). If the Commission's construction of the Fund statute is erroneous, a cogent reason for disregarding its construction is that its construction defeats the stated policy of the statute.

¶9 Further, the Commission's "interpretation" of the statute is not particularly clear. Dobson's request for reimbursement from the Fund attaches the Commission's required form. In the first section of the form, the Commission requests the applicant to "indicate under which category your request for funding is being made." Dobson checked the second, and only relevant, alternative: "Infrastructure expenditures or costs incurred in response to facility or service requirements established by a legislative, regulatory, or judicial authority or other governmental entity mandate." This language repeats the language of section 139.106(G). However, no separate entry appears in this "category" section of the form for costs incurred as the result of "state law" using the language found in section 139.106(K)(1). That language does appear in the next section of the form: "which of the following occurrences" caused the cost increase: (A) "Decrease in Revenue from Federal Universal Service Fund" or (B) "Reduction in Revenue/Increase in Cost from Existing or Future Federal or State Regulatory Rules, Orders, or Policies or by Federal or State Law." Dobson selected the latter. The Commission's form appears to recognize a connection between costs incurred pursuant to sections 139.106(G) and (K) and also that Fund sources are available for both. Further, the Commission concedes that Dobson was required to relocate its transmission lines as the result of a "governmental entity mandate."[6] 17 O.S.2011 § 139.106(G)(2)

¶10 Nonetheless, the Commission argues that there is a statutory distinction between costs resulting from the mandate of any governmental entity and costs resulting from "state law." Essentially, the Commission relies on principles of statutory construction to support its position. It contends, in essence, that if the Legislature had intended for the Fund to pay eligible telecommunications providers for their relocation costs incurred as the result of municipal action, the Legislature would have done so in express terms. It concludes that by limiting reimbursement to "existing or future federal or state regulatory rules, orders, or policies or by federal or state law" the Legislature clearly indicated its intent to exclude from reimbursement any costs incurred as the result of municipal action. The rules of statutory construction are well-known and cited by both parties. See, e.g., City of Tulsa v. Pub. Emps. Relations Bd., 1998 OK 92, ¶ 14, 967 P.2d 1214; Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶ 13, 33 P.3d 302. The problem is selecting which canon of construction to apply to a particular statute. "[T]here are two opposing canons on almost every point." Karl Llewellyn, The Common Law Tradition: Deciding Appeals 234 (1960).

A. Plain Meaning

¶11 The Commission begins with the "plain meaning" canon of statutory construction and argues that "state" means "state" not "state or city," and "state law" means an act of the Oklahoma Legislature, not a municipal ordinance. From this argument, the Commission concludes that the Legislature did not intend to include municipal ordinances in section 139.106(K)(1)(b). We agree that "the general rule is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221, ¶ 19, 301 P.2d 212. However, the Commission's interpretation of section 139.106(K)(1)(b) is not self-evident. An opposing and equally valid interpretation of this text is that, if the Legislature had intended to exclude municipal ordinances from this provision, it would have used the term "state statute," rather than the broader term, "state law."[7] Consequently, reference solely to the "plain language" of the statute does not resolve the issue. "The test for ambiguity in a statute is whether the statutory language is susceptible of more than one reasonable interpretation." In Re: Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 9, 326 P.3d 496. "Rules of construction are applied to determine legislative intent when the statutory language is ambiguous." Torres v. Seaboard Foods, LLC, 2016 OK 20, ¶ 11, 373 P.3d 1057 (footnote omitted).

B. Comparative Language of the Statutory Provisions

¶12 The Commission next argues that inclusion of language that encompasses municipal law in one section of the statute requires the conclusion that the Legislature intended to exclude municipal law when it did not use the same language in section 139.106(K)(1)(b). The Commission acknowledges that the phrase "other governmental entity" in section 139.106(G) includes municipalities, but argues that because the phrase does not appear in section 139.106(K)(1)(b), the Legislature did not intend to include municipalities in that provision. In support of this proposition, the Commission cites Russello v. United States, 464 U.S. 16, 104 S. Ct. 296 (1983), for the proposition that a court will "presume" that the omission of language in one part of a statute that is contained in another part was intentional.[8] The Russello Court relied on this principle of statutory construction to determine that different provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 to 1968, required forfeiture of different kinds of illegally obtained property. However, application of the Russello canon only gives rise to a "presumption" that omission of the language at issue was intentional.[9] "The primary goal of statutory construction is to ascertain and follow the intention of the Legislature." TRW/Reda Pump v. Brewington, 1992 OK 31, ¶ 5, 829 P.2d 15 (citing Ledbetter v. Okla. Alcoholic Beverage Laws Enforcement Comm'n, 1988 OK 117, ¶ 7, 764 P.2d 172). To determine whether Congress's choice of language was, in fact, intentional, the Russello Court examined "the structure of the RICO statute," concluding the omission of certain language was intentional because a contrary construction would "blunt the effectiveness of the provisions in combatting illegitimate enterprises . . . ." Russello, 464 U.S. at 24, 104 S. Ct. at 301. As did the Commission, we find Russello instructive but for different reasons.

¶13 Construction of a statutory provision by reference to its structure, purpose and the text of the entire enactment is a method familiar to Oklahoma courts.



We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, "we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy."



Richards v. United States, 369 U.S. 1, 11, 82 S. Ct. 585, 591-92 (1962) (footnotes omitted) (quoted in Anderson v. Eichner, 1994 OK 136, n.25, 890 P.2d 1329). "We must read [a provision] in light of the other statutes amended or enacted in the same measure." Muskogee Urban Renewal Auth. v. Excise Bd. of Muskogee Cnty., 1995 OK 67, ¶ 24, 899 P.2d 624 (footnote omitted). "[S]tatutory language . . . does not occur in isolation from the rest of the statute in which it appears." In Re: Initiative Petition No. 397, State Question No. 767, 2014 OK 23, ¶ 12, 326 P.3d 496. We reject the Commission's request that we focus only on a "single sentence or member of a sentence" (i.e., section 139.106(K)(1)(b)) in isolation from the remaining provisions of the Fund statute and the statute's stated policy. Anderson v. Eichner, 1994 OK 136, n.25, 890 P.2d 1329.



[T]he courts of this state are required to consider all parts of the act together and not an isolated word, phrase, sentence or paragraph and consider such to the exclusion of the remaining parts of the act. Words, phrases and sentences of a statute are to be understood as used, not in any abstract sense, but with regard to the context and that sense which best harmonizes with all other parts of the statute.



Groendyke Transport Inc. v. Gardner, 1960 OK 153, ¶ 9, 353 P.2d 695, reversed on other grounds by Garrison v. Bechtel Corp., 1995 OK 2, ¶ 16, 889 P.2d 273.

C. Application of the Commission's Interpretation

¶14 Following these principles, we encounter immediate difficulty with the Commission's interpretation.



1. Would an eligible provider that invests the time and expense of proving "necessity" for the relocation pursuant to section 139.106(G) because of a city mandate be entitled to reimbursement from the Fund, but the same provider, because it serves less than seventy-five thousand access lines, not be entitled to reimbursement pursuant to section 139.106(K) for costs required by the same city mandate? Presumably, even small providers serving less than seventy-five thousand access lines would be entitled to reimbursement of their costs if they pursued the more costly "as necessary" procedure set out in section 139.106(G).

2. Section 139.106(K)(1)(c) states: "[I]f, as a result of changes made as required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences a reduction in costs . . . the provider shall reduce the level of OUSF funding it receives . . . ." Would a provider receiving reimbursement from the Fund not be required to reduce its level of funding if it experienced a reduction in costs as the result of municipal action although a provider experiencing a reduction in costs as a result of Department of Transportation action would be required to reduce its level of funding? Following the Commission's application of the Russello canon, if the phrase "other governmental entity mandate" does not appear in section 139.106(K)(1)(c), the provision does not include municipal action.

3. Even assuming "state law" does not include a municipal ordinance, why is reimbursement to Dobson not authorized by "state regulatory . . . policies?" 17 O.S.2011 § 139.106(K)(1)(b). It is the policy of this State to "promote and ensure the availability of primary universal services at rates that are reasonable and affordable." 17 O.S.2011 § 139.106(B). Fund reimbursement is "made available to eligible local exchange telecommunications service providers" to accomplish that purpose. 17 O.S.2011 § 139.106(A).[10]



These inconsistent and incongruent results, which the Commission did not resolve in its petition for rehearing or during oral argument, prevent a consistent construction of the Fund statute if we follow the Commission's interpretation. "When a strict literal construction leads to an inconsistent or incongruent result between provisions, we will utilize rules of statutory construction to reconcile the discord and ascertain the legislative intent." Hogg v. Oklahoma Cnty. Juvenile Bur., 2012 OK 107, ¶ 7, 292 P.3d 29.

¶15 Finally, in its petition for rehearing the Commission argues that its construction of the Fund statute is entitled to a "degree of deference . . . in the statutory construction process." Other than a general reference to the Oral Roberts rule that a longstanding administrative agency construction of a statute may be entitled to some deference in certain circumstances, the Commission cites no authority supporting this proposition. Construction of the Fund statute does not require the technical or scientific knowledge, skill or expertise required of the Commission, for example, to supervise, regulate and control all transportation and transmission companies operating in the State. Okla. Const. art 9, § 18. This is simply a matter of determining what a statute means, and that is within the expertise of the courts. An administrative agency's "legal rulings are subject to an appellate court's plenary, independent and nondeferential reexamination." American Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95, ¶ 25, 341 P.3d 56. The Legislature expects "the courts to follow [settled rules of statutory construction] when construing and enforcing statutes in order that there may be stability and certainty in their construction and enforcement." Shepard v. Okla. Dep't of Corr., 2015 OK 8, ¶ 16, 345 P.3d 377. This Court and the Oklahoma Supreme Court are "the ultimate authority on the interpretation of the laws of this State . . . ." Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42, ¶ 13, 371 P.3d 477 (footnote omitted). As directed by the Oklahoma Constitution, we exercise our "independent judgment" to determine whether the Commission's interpretation of the Fund statute in this case is "sustained by the law." It is not.

II. The Intent of the Oklahoma Universal Service Fund

¶16 To determine the intent of the Legislature in using the term "state law" in section 139.106(K)(1)(b), we consider the objectives and policy of the State and federal telecommunications acts and particularly the Universal Service Fund Act. "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." McClure v. ConocoPhillips Co., 2006 OK 42, ¶ 12, 142 P.3d 390 (footnotes omitted). "Statutes are interpreted to attain [the Legislature's] purpose and end championing the broad public policy purposes underlying them." Id. (footnote omitted).

¶17 The Oklahoma Telecommunications Act of 1997 was enacted in conjunction with the federal Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in scattered sections of 47 U.S.C.). A central tenant of the federal regulation is the promotion of universal service.



Consumers in all regions of the Nation, including low-income consumers and those in rural, insular, and high cost areas, should have access to telecommunications and information services, including interexchange services and advanced telecommunications and information services, that are reasonably comparable to those services provided in urban areas and that are available at rates that are reasonably comparable to rates charged for similar services in urban areas.



47 U.S.C. § 254(b)(3). "A common carrier designated as an eligible telecommunications carrier . . . shall be eligible to receive universal service support in accordance with section 254 of this title . . . ." 47 U.S.C. § 214(e)(1). "A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service." 47 U.S.C. § 254(f).

¶18 Within the context and authorization of the federal legislation, the Oklahoma Universal Service Fund was established "to promote and ensure the availability of primary universal services, at rates that are reasonable and affordable . . . ." 17 O.S.2011 § 139.106(B). To accomplish this purpose, the Fund collects a charge from all telecommunications carriers authorized to do business in this state. 17 O.S.2011 § 139.106(C). In addition, the Fund "shall provide funding to local exchange telecommunications service providers that meet the eligibility criteria established in this section" to defray certain costs including the costs of relocating transmission lines at the government's request. Id.

¶19 There is nothing in the policy of providing universal services and financially supporting that policy which would limit Fund reimbursement to costs required by some governmental entities, but not others. In fact, the reference to "state regulatory rules, orders, or policies" in section 139.106(K)(1)(b) suggests a broader interpretation of "state law" than limiting that term to Oklahoma statutes. It is the "policy" of the State of Oklahoma to provide financial support to "eligible local exchange telecommunications service providers" to "ensure the availability of primary services, at rates that are reasonable and affordable . . . ." 17 O.S.2011 § 139.106(A) and (B). For purposes of this appeal, it is not disputed that Dobson is an eligible local exchange provider providing primary services to its McLoud exchange subscribers.

¶20 Further, responsibility for the construction and maintenance of the public highways, roads and streets in Oklahoma is allocated among three governmental entities: (1) the Transportation Commission through the Department of Transportation; (2) the boards of county commissioners; and (3) municipalities. See 11 O.S.2011 § 36-101; 69 O.S.2011 §§ 501 and 4002. Cf., 69 O.S.2011 § 1331 (recognizing the jurisdiction of the State, counties and municipalities to provide limited access streets and highways and granting to each of these governmental entities the authority to acquire necessary rights-of-way through the State's power of eminent domain). In addition, each of these governmental entities has the power to require a utility company such as Dobson to remove or relocate its transmission lines from the street, road or highway right-of-way at the utility's expense. 69 O.S.2011 § 1403; 11 O.S.2011 § 36-101; City of Oklahoma City Mun. Ordinance No. 23499 § 50-13. Within their respective jurisdictions, each of these governmental entities has equivalent authority over public streets, roads and highways. When the exercise of that authority affects the provision of universal services, the Fund is authorized to pay the cost of relocation.

¶21 Clearly, there is a difference between a municipal ordinance and a state statute. The Commission's application of a particular rule of construction in this case offers an interpretation of the language at issue, emphasizing that difference. But the issue here is whether that difference is material to the legislative policy of the Oklahoma Universal Service Fund. The Commission has offered no policy argument justifying that distinction in its appellate briefing. During oral argument, the Commission suggested that its construction was consistent with the policy of providing universal services in "rural areas" and noted that Dobson's relocation occurred within an urban area. Section 139.106(B) does provide that the Fund "shall be administered to . . . provide for reasonably comparable services at affordable rates in rural areas as in urban areas." But the Commission's "policy argument" is unpersuasive. First, there are no facts in this record from which to conclude that Choctaw Road located in eastern Oklahoma County, although within the limits of the municipal territory of Oklahoma City, is in an urban rather than a rural area. Second, the Commission's argument fails to account for the fact that the Fund authorizes reimbursement for the relocation of utilities in urban areas if requested by the Department of Transportation or a county. In short, the Commission has not shown that the purpose of the Fund was to reimburse some eligible telecommunications providers, but not others, or that the Fund was designed to reimburse a provider's increased costs required by some governmental entities, but not others. In the end, the purpose of all rules of statutory construction is the same: to determine the Legislature's purpose in enacting a particular statute. McClure v. ConocoPhillips Co., 2006 OK 42, ¶ 12, 142 P.3d 390. The purpose of the Fund is to promote and ensure the availability of primary universal services, at rates that are reasonable, comparable and affordable in rural and urban areas. 17 O.S.2011 § 139.106(B). The Commission's interpretation is inconsistent with the legislative intent expressly stated as the policy of the Telecommunications Act of 1997 and the Oklahoma Universal Service Fund.

¶22 Consequently, for purposes of 17 O.S.2011 § 139.106(K)(1)(b), the phrase "federal or state regulatory rules, orders, or policies or by federal or state law" includes any lawful municipal action. The Commission's order is vacated and this case is remanded for further proceedings.

CONCLUSION

¶23 The Oklahoma Universal Service Fund was created to defray the cost incurred by eligible telecommunications service providers resulting from government action. Dobson was required to relocate its telecommunications facilities in Oklahoma City's Choctaw Road right-of-way when the City decided to widen the road. Dobson's cost of relocating its facilities is the kind of expense the Fund was intended to cover. The phrase "federal or state regulatory rules, orders, or policies or by federal or state law," as used in 17 O.S.2011 § 139.106(K)(1)(b), includes any lawful municipal ordinance. Consequently, the City's direction to Dobson to relocate its facilities is an "occurrence" for purposes of 17 O.S.2011 § 139.106(K)(1). That is the sole issue decided in this appeal.[11] The Commission's order denying Dobson's request for reimbursement from the Fund is vacated, and this case is remanded for further proceedings.

¶24 VACATED AND REMANDED FOR FURTHER PROCEEDINGS.


GOODMAN, C.J., and WISEMAN, P.J., concur.



FOOTNOTES


[1] After our initial Opinion was issued, the Commission filed a petition for rehearing. We set the case for oral argument, which was held August 19, 2016, and by separate order today we grant the petition and withdraw our initial Opinion.



[2] Title 17 O.S.2011 § 139.106 provides, in pertinent part:

A. There is hereby created within the Corporation Commission the "Oklahoma Universal Service Fund" (OUSF). Not later than January 31, 1998, the Corporation Commission shall promulgate rules implementing the OUSF so that, consistent with the provisions of this section, funds can be made available to eligible local exchange telecommunications service providers.



. . . .



D. Within ninety (90) days after receipt of a request for funds from an eligible provider, the Administrator designated pursuant to Section 7 of this act shall review and determine the accuracy of the request and advise the provider requesting the funds of the determination of eligibility made by the Administrator. . . .



. . . .



G. Any eligible local exchange telecommunications service provider may request funding from the OUSF as necessary to maintain rates for primary universal services that are reasonable and affordable. OUSF funding shall be provided to eligible local exchange telecommunications service providers for the following:

1. To reimburse eligible local exchange telecommunications service providers for the reasonable investments and expenses not recovered from the federal universal service fund or any other state or federal government fund incurred in providing universal services;

2. Infrastructure expenditures or costs incurred in response to facility or service requirements established by a legislative, regulatory, or judicial authority or other governmental entity mandate;



. . . .



6. For other purposes deemed necessary by the Commission to preserve and advance universal service.



. . . .



K. 1. Each request for OUSF funding by an eligible ILEC [incumbent local exchange telecommunications service provider] serving less than seventy-five thousand access lines shall be premised upon the occurrence of one or more of the following:

a. in the event of a Federal Communications Commission order, rule or policy, the effect of which is to decrease the federal universal service fund revenues of an eligible local exchange telecommunications service provider, the eligible local exchange telecommunications service provider shall recover the decreases in revenues from the OUSF,

b. if, as a result of changes required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences a reduction in revenues or an increase in costs, it shall recover the revenue reductions or cost increases from the OUSF, the recovered amounts being limited to the net reduction in revenues or cost increases, or

c. if, as a result of changes made as required by existing or future federal or state regulatory rules, orders, or policies or by federal or state law, an eligible local exchange telecommunications service provider experiences a reduction in costs, upon approval by the Commission, the provider shall reduce the level of OUSF funding it receives to a level sufficient to account for the reduction in costs.

Section 139.106 was amended by Laws 2016, HB 2616, ch. 270, § 4, emerg. eff. May 9, 2016.



[3] Sprint Communications Company, L.P., Sprint Spectrum, L.P., Virgin Mobile USA, L.P., and TW Telecom, Inc., contributors to the Fund, filed a protest of Dobson's application, were permitted to intervene by the Commission and filed a brief supporting the Division's recommendation.



[4] Because it reached this conclusion, the Commission did not review the amount of costs Dobson alleged it incurred and that is not an issue in this appeal.



[5] We express no view regarding the Commission's actual intent in amending its rules but note that defining the word "State" to mean the State of Oklahoma does not dispose of Dobson's argument that a city can only act pursuant to the law delegated to it by the State.



[6] The Commission also points out that Dobson relied on 69 O.S.2011 § 1403 when it submitted its form. The Commission determined that section 1403 did not apply because it was limited to telecommunications lines on, across or under roads or highways under the supervision of the Department of Transportation or county boards of commissioners. The application of section 1403 is not dispositive of Dobson's appeal.



[7] Dobson argues that in a broad sense the City was acting pursuant to state law because Dobson's right-of-way was granted by state law and the jurisdiction over streets was delegated to the City by state law. Although not without merit, this contention fails to advance the argument very far. It is also plausible to argue that the City was acting pursuant to federal law because Congress delegated to states the authority to "adopt regulations not inconsistent with the [Federal Communication] Commission's rules to preserve and advance universal service." 47 U.S.C. § 254(f). Dobson does not argue that its relocation was required by federal law. A less remote analysis is a better indicator of the Legislature's intent.



[8] Dobson argues that the "Russello canon" is not applicable because subparagraphs 139.106(G) & (K) are not parallel provisions. Without deciding this issue, we discuss the Commission's position that the Russello canon is determinative of this appeal.



[9] Black's Law Dictionary defines "presume" as: "To assume beforehand." Black's Law Dictionary 1067 (5th ed. 1979.). In its more general application, the Oxford Dictionary defines "presume" as to "[u]ndertake without adequate authority or permission; venture on." New Shorter Oxford English Dictionary 2345 (1993 ed.). The Commission argues that the Russello canon is superior to all other canons of construction and that the result achieved through its application supersedes the result achieved through application of any other canon, a principle it has not supported with any authority. On the contrary, our view is consistent with fundamental principles of interpreting legal text. "No canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 59 (2012).



[10] In its petition for rehearing, the Commission argued that we could not consider state "policy" referenced in section 139.106(K)(1)(b) because Dobson did not argue that position before the Commission. In this public law litigation, "the reviewing court is generally free to grant corrective relief upon any applicable legal theory that finds support in the record . . . ." Schulte Oil Co., Inc. v. Okla. Tax Comm'n, 1994 OK 103, ¶ 7, 882 P.2d 65.



[11] The Commission contends that we should affirm its decision on the alternate ground argued by the interveners, Sprint Communications Company, L.P., Sprint Spectrum, L.P., Virgin Mobile USA, L.P., and TW Telecom, Inc. These parties argue that Dobson's request should be denied because it failed to comply with a Commission rule requiring a Fund applicant to seek alternate funding before filing a request for reimbursement of relocation expenses. At oral argument, the Commission was uncertain whether this issue had been presented to the Commission. "To permit a review on appeal of findings and determinations which were not properly and fully presented to the Commission for its deliberation and informed determination is to deprive the public at large and the appellate court of a valuable and necessary service." State ex rel. Cartwright v. Okla. Natural Gas Co., 1982 OK 11, ¶ 10, 640 P.2d 1341. Regardless, it is clear that the Commission did not decide this issue in its Order denying Dobson's request. We decline to decide in this appeal an issue, particularly one that may require factual determinations to resolve, that has not been previously decided by the Commission. "[I]t is not the duty of the appellate court on review to make first instance determinations of disputed law or fact issues." Evers v. FSF Overlake Assocs., 2003 OK 53, ¶ 18, 77 P.3d 581. That is the rule "in every case -- whether in law, equity or on appeal from an administrative body." Bivins v. State ex rel. Okla. Mem'l Hosp., 1996 OK 5, ¶ 19, 917 P.2d 456.




 







 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 88, 760 P.2d 816, 59 OBJ 1987, Reynolds v. Porter
Discussed
 1988 OK 117, 764 P.2d 172, 59 OBJ 2936, Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Com'n
Discussed
 1992 OK 31, 829 P.2d 15, 63 OBJ 682, TRW/Reda Pump v. Brewington
Discussed
 1994 OK 103, 882 P.2d 65, 65 OBJ 3046, Schulte Oil Co., Inc. v. Oklahoma Tax Com'n
Discussed at Length
 1994 OK 136, 890 P.2d 1329, 65 OBJ 4037, Anderson v. Eichner
Discussed at Length
 1956 OK 221, 301 P.2d 212, STEMMONS, INC. v. UNIVERSAL C.I.T. CREDIT CORP.
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 1960 OK 153, 353 P.2d 695, GROENDYKE TRANSPORT, INC. v. GARDNER
Discussed
 1995 OK 2, 889 P.2d 273, 66 OBJ 355, Garrison v. Bechtel Corp.
Discussed
 1995 OK 67, 899 P.2d 624, 66 OBJ 2124, Muskogee Urban Renewal Authority v. Excise Bd. of Muskogee County
Discussed
 2003 OK 53, 77 P.3d 581, EVERS v. FSF OVERLAKE ASSOCIATES
Discussed
 2003 OK 75, 77 P.3d 1069, HEFFRON v. DISTRICT COURT OF OKLAHOMA COUNTY
Discussed
 1996 OK 5, 917 P.2d 456, 67 OBJ 206, Bivins v. State ex rel. Okl. Mem. Hosp.
Discussed
 1930 OK 323, 289 P. 759, 144 Okla. 85, McCAIN v. STATE ELECTION BD.
Discussed
 2006 OK 42, 142 P.3d 390, MCCLURE v. CONOCOPHILLIPS COMPANY
Discussed at Length
 1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed
 2012 OK 107, 292 P.3d 29, HOGG v. OKLAHOMA COUNTY JUVENILE BUREAU
Discussed
 2013 OK 100, 318 P.3d 206, TROXELL v. OKLAHOMA DEPT. OF HUMAN SERVICES
Cited
 2014 OK 23, 326 P.3d 496, IN RE: INITIATIVE PETITION NO. 397, STATE QUESTION NO. 767
Discussed at Length
 2014 OK 95, 341 P.3d 56, AMERICAN AIRLINES, INC. v. STATE ex rel. OKLAHOMA TAX COMMISSION
Discussed
 2015 OK 8, 345 P.3d 377, SHEPARD v. OKLAHOMA DEPARTMENT OF CORRECTIONS
Discussed
 2016 OK 20, 373 P.3d 1057, TORRES v. SEABOARD FOODS, LLC
Discussed
 2016 OK 42, 371 P.3d 477, ROBINSON v. FAIRVIEW FELLOWSHIP HOME FOR SENIOR CITIZENS, INC.
Discussed
 1982 OK 11, 640 P.2d 1341, State ex rel. Cartwright v. Oklahoma Natural Gas Co.
Discussed
 1982 OK 121, 654 P.2d 607, Oliver v. City of Tulsa
Discussed
 1998 OK 92, 967 P.2d 1214, 69 OBJ 3242, City of Tulsa v. State ex rel. Public Employees Relations Board
Discussed
 1985 OK 97, 714 P.2d 1013, 56 OBJ 2777, Oral Roberts University v. Oklahoma Tax Com'n
Discussed at Length
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 36-101, Powers of Municipalities
Discussed
Title 17. Corporation Commission
 Cite
Name
Level

 17 O.S. 139.101, Short Title
Cited
 17 O.S. 139.102, Definitions
Cited
 17 O.S. 139.106, Oklahoma Universal Service Fund (OUSF)
Discussed at Length
Title 69. Roads, Bridges, and Ferries
 Cite
Name
Level

 69 O.S. 1403, Public Utilities on State Highways - Location and Removal
Discussed
 69 O.S. 501, Classes of Highways - Construction, Repair, and Maintenance - Ownership of Bridges on Roads Removed From System - Maps
Cited
 69 O.S. 1331, Powers of State and Governing Bodies
Cited