**OKLAHOMA GAS AND ELECTRIC COMPANY, an Oklahoma corporation, Appellant,**

v.

**KAY ELECTRIC COOPERATIVE, an Oklahoma cooperative, et al., Appellees.**

No. 45714.

Supreme Court of Oklahoma.

Feb. 26, 1974.

H. Duane Stratton, John W. Harbour, Jr., Oklahoma City, for appellant.

Robert L. Lawrence, Jr., Everett L. Cunningham, Tulsa, John C. Buckingham, McPherson & Buckingham, Oklahoma City, for Public Service Co. of Oklahoma, an interested party.

Clyde J. Watts, Jay M. Galt, Watts, Looney, Nichols & Johnson, Oklahoma City, for appellees.

BERRY, Justice:

Oklahoma Gas & Electric Company [O G & E] commenced this action by filing application requesting the Corporation Commission to find an existing 24 KV line is an "existing distribution line" as defined in the Retail Electric Supplier Certified Territory Act [17 O.S.1971 § 158.21 et seq.] and to enjoin appellee Kay Electric Cooperative [the Coop] from furnishing electric service to a new electric consuming facility [the Getty facility] on the ground the Act grants O G & E the exclusive right to render such service.

O G & E and the Coop are both retail electric supplier [suppliers] governed by the Act. Public Service Company of Oklahoma participated in the proceedings as an interested party.

The Act requires suppliers to file with the Commission map showing existing distribution lines; requires the Commission to prepare maps establishing unincorporated

areas within which each supplier is to have the exclusive right to provide electric service; and, subject to certain exceptions, provides the boundaries of the certified territory of each supplier are a line substantially equidistant between its existing distribution lines and the nearest existing distribution lines of any other supplier in every direction, thereby certifying to each supplier the unincorporated area which is located substantially in closer proximity to its existing distribution lines than the nearest existing distribution lines of any other supplier.

At the time of the hearing the suppliers had furnished maps to the Commission showing existing distribution lines, but the Commission had not yet prepared maps showing each supplier's certified territory, and therefore the proceeding was governed by § 158.25(B) which provides new facilities are to be served by the retail electric supplier which has an existing distribution line in closer proximity to the electric consuming facility than is the nearest existing distribution line of any other retail electric supplier and disputes under the section shall be resolved by the Commission.

Evidence introduced at the hearing indicates prior to the time the Coop extended its line to serve the Getty facility, O G & E's 24 KV line was in closer proximity to the facility than the Coop's nearest existing line, a 7.2 KV line, and therefore the sole question presented to the Commission was whether O G & E's 24 KV line qualifies as an "existing distribution line" under the Act.

Section 158.22(3) provides:

"3. The term 'existing distribution line' shall mean an electric line which on the effective date of this act

a. is located in an unincorporated area and

b. is being or has been substantially used for retail electric service."

Section 158.22(4) defines retail electric service as follows:

" * * * electric service furnished to a consumer for ultimate consumption, but does not include wholesale electric energy furnished by an electric supplier to another electric supplier for resale."

In a prior proceeding the Commission determined for purposes of the Act a 24 KV line would be presumed to be a transmission line and lines of lesser voltage would be presumed to be distribution lines.

O G & E introduced evidence the 24 KV line is 101 miles long and provides electrical service to 45 rural customers and 2683 non-rural retail customers; in each town where non-rural retail customers are located there is a transformation or substation which reduces the voltage prior to distribution to customers; the segment of the 24 KV line near the Getty facility commences at the Deer Creek substation and runs more than 10 miles to the Medford substation; three retail customers take directly from this line, but electric users within the incorporated area of Medford are served through lines from the Medford substation.

The Commission found there was a disagreement as to the meaning of the term "substantial use" in § 158.22(3)(b) and standards should be established to be applied in the instant cause and subsequent causes in determining the meaning of the term as applied to whether a 24 KV or above line is a distribution or transmission line and in establishing certified territory boundaries under the Act.

The Commission therefore rejected the Coop's theory that only line from the low voltage side of a transformer reducing voltage below 24 KV is a distribution line; rejected O G & E's theory an entire line or system is a distribution line if there is any retail service from the line, or retail customers ultimately served with energy it carries; and made the following findings: (1) Retail service from a 24 KV line through municipal or other substations is not retail service so as to qualify the 24 KV line as a distribution line; (2) Portions of a line of 24 KV or above underbuilt by lines of lower voltage will be disregarded and the low voltage line presumed to qualify as a distribution line;

(3) Where the principal function of a 24 KV or above line, or segment thereof, is to transmit energy elsewhere and service to isolated retail customers is only incidental to that function, the line will be deemed a transmission line; (4) Where the principal purpose of a 24 KV or above line, or segment thereof, is to transmit energy to retail customers who take directly from the line, the line will be deemed a distribution line; (5) Where a substantial number of retail customers within a restricted area receive energy directly from a 24 KV or above line, or segment thereof, the principal purpose of which is transmission of energy elsewhere, a reasonable segment of the line in the immediate vicinity of such service will be deemed a distribution line; (6) In determining whether service to retail customers direct from a 24 KV line, or segment thereof, qualifies the line as a distribution line, the Commission will consider the number of retail customers served, their location, type and size of load, amount of usage and other pertinent factors; (7) When a 24 KV or above line, or segment thereof, is deemed transmission, it will be disregarded in establishing territories but customers being served on the effective date of the Act may be retained even if located in territory allocated to another supplier.

Applying the above standards the Commission designated certain portions of the 24 KV line a transmission line and certain portions a distribution line, found the segment near the Getty facility to be transmission line, and entered an order that the Coop was entitled to serve the Getty facility.

On appeal O G & E contends the legislative intent, as set out in § 158.23, is to avoid wasteful duplication of distribution facilities, unnecessary encumbering of the landscape, and waste of materials and natural resources, and to minimize disputes between retail suppliers which may result in inconvenience, diminished efficiency, and higher costs in serving customers; in order to accomplish this purpose it provided for allocation of territory to existing distribution lines; the Commission's order frustrates this intent because it disregards many miles of existing 24 KV line which could be used for retail electric service; and therefore the Commission erred by refusing to find the entire 24 KV line is an existing distribution line within the meaning of the Act.

In support of this contention O G & E first argues the Act makes no distinction between distribution and transmission lines, but uses only the term "existing distribution line" which is defined in § 158.22(3), supra, as one being "substantially used" for retail electric service; the prior Act referred to a maximum voltage in defining distribution lines, but no such arbitrary voltage limitation is set out in the present Act because the legislature recognized technological advances now permit large customers to be served from high voltage lines through single transformation; therefore it can be inferred the legislature did not intend to draw a distinction between transmission and distribution lines, but intended only to draw a distinction between lines used for retail electric service and lines used for wholesale electric service; and the concept of fragmenting lines frustrates legislative intent by disregarding existing lines and creates administrative problems.

■ We conclude the intent of the Act is to prevent waste and duplication of distribution facilities by allocating unincorporated areas of the state to the retail electric suppliers who are actually furnishing retail electric service to the unincorporated areas.

Exhibits introduced into evidence indicate that in some areas O G & E's 24 KV line runs for miles without serving any retail customers. If we accept O G & E's contention the entire line is an existing distribution line for purposes of the Act, numerous high voltage lines which have been used to transport electricity in bulk from one area to another will qualify as distribution lines in areas where they serve no retail customers.

We note the statute does use the term "distribution lines" rather than "distribution and transmission line" or "electrical lines."

In State v. North Itasca Electric Co-operative, 247 Minn. 534, 78 N.W.2d 54, the Coop contended a 22 KV line was an integral part of its electrical distribution system and was therefore a distribution line for tax purposes. There that court stated:

"In determining what the legislature meant by * * * the terms 'distribution line' and 'transmission line' * * * we are guided by § 645.08(1) which provides that, in construing statutes, words and phrases are to be understood according to their common and approved usage. * * *

"The state Tax Commission construes transmission lines to be those which take the current from the point of delivery * * * and deliver it in bulk to a point or points for distribution. The interpretation * * * seems to be in accord with the common usage of the terms. * * * The dictionary definitions of the two terms are in accord with the notion that transmission lines are those that transfer current from one place to another but do not divide or apportion it among the consumers, while the distribution lines are engaged only in the latter function. * * *

"The distinction between the terms * * * lies in the primary objective and purpose for which the line is used. It is apparent that the primary objective and purpose of the 22,000-volt line in question is the transfer of large quantities of electrical energy in bulk to locations from which it may be distributed or allocated to consumers by means of other lines."

See also United States v. Aluminum Company of America, 377 U.S. 271, 84 S.Ct. 1283, 12 L.Ed.2d 314.

■ Therefore, we conclude that by using the term "distribution lines", rather than "electric lines" or "distribution and transmission lines", the legislature intended to recognize the common usage distinction between "transmission" and "distribution" lines and to exclude transmission lines—those used to transport electricity in bulk without apportioning it to retail consumers —from the definition of "existing distribution lines." Therefore, we conclude the Commission did not err by drawing a distinction between "distribution" and "transmission" lines and refusing to hold an entire line is a distribution line if there is any retail service from the line or retail consumers ultimately served with energy it carries.

■ O G & E next contends the Commission erred in finding retail service through a municipal or other substation will not be considered retail service from a line of 24 KV or above so as to qualify the line as a distribution line because the statute defining existing distribution line makes no reference to municipal or other substations. Since we have already determined the term distribution line does not include lines which take current from the point of delivery and deliver it in bulk to a point of distribution, we conclude this contention is without merit.

■ O G & E further contends the Commission's construction of the word "substantially" to mean "principal", as distinguished from, "incidental", is erroneous because the purpose of the Act is to prevent duplication of facilities, and, in order to accomplish this purpose, the legislature must have intended to include all lines which have been, or are actually being used for retail service, as contrasted to wholesale electric service, even though such retail use is not great in amount and not the principal use of such line.

We have already determined that the legislature's use of the term distribution lines indicates the legislature intended to exclude lines used to transport electricity in bulk from the definition of "existing distribution lines."

Further, in Application of Scroggin, 103 Cal.App.2d 281, 229 P.2d 489, the court stated:

"* * * The word 'substantial' is a relative term, the meaning of which is to be gauged by all the circumstances surrounding the transaction in reference to which the expression has been used. It imports a considerable amount of value in opposition to that which is inconsequential or small. * * *"

Therefore, we conclude the Commission did not err by defining substantial to mean "principal" as distinguished from "incidental."

█ In its second proposition O G & E contends the Commission's order holding the Coop is entitled to furnish electric service to the Getty facility is erroneous. Since we have approved the standard the Commission applied in determining the segment of the 24 KV line near the Getty facility is not an "existing distribution line" within the meaning of the Act, we conclude this contention is without merit.

█ In its third proposition O G & E contends the Commission's order deprives O G & E of its right to utilize existing electric distribution lines, and to have exclusive service territories certified to it on the basis of the 24 KV line disqualified by the order, without due process of law and without compensation, citing Nicoma Park Telephone Co. v. State, 198 Okl. 441, 180 P.2d 626.

In the Nicoma Park case the territory involved was within the area undertaken and professed to be served by the Nicoma Park Company. The Commission entered an order requiring Bell, over Bell's objection, to furnish exchange service in the area, even though the territory was not within the area Bell professed to serve.

There we held the order resulted in an unconstitutional taking of Nicoma's property, stating:

"Although the order did not exclude the Nicoma Park company from continuing service to the area, the evidence is undisputed that the practical effect thereof would be to 'wash out' that company and destroy the entire value of its franchise, and a high percentage of the value of its equipment in that locality. * * *"

In that case the second company was ordered to invade the first company's territory. In the present case O G & E's territory is not being invaded, since the purpose of these proceedings is to allocate territory pursuant to the statute. Furthermore, O G & E makes no contention it is being deprived of territory which it would have been entitled to serve under prior statutes and therefore we determine this contention is without merit.

Affirmed.

DAVISON, C. J., WILLIAMS, V. C. J., HODGES, LAVENDER, BARNES, and SIMMS, JJ., and BLISS, Special Justice, concur.

IRWIN, J., concurs in result.

Justice JOHN B. DOOLIN, having certified his disqualification in this case, the Honorable C. F. BLISS, Jr., was appointed Special Justice in his stead.