OKLA. GAS AND ELECTRIC CO. v. STATE ex rel. OKLA. CORPORATION COMMISSION
2023 OK 33
Case Number: 117896
Decided: 04/03/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 33, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

OKLAHOMA GAS AND ELECTRIC COMPANY and ONEOK ARBUCKLE II PIPELINE, LLC, Appellants,
v.
STATE OF OKLAHOMA ex rel. OKLAHOMA CORPORATION COMMISSION, Appellee.

APPEAL FROM OKLAHOMA CORPORATION COMMISSION CAUSE NO. PUD 201800075, ORDER NO. 692718

Dana L. Murphy, Chairman, and J. Todd Hiett, Vice Chairman.

¶0 In 2018, ONEOK Arbuckle II Pipeline, LLC began construction of a natural gas liquid pipeline to transport Oklahoma production to the interstate market. The pipeline required electricity to operate a series of pump stations, including the Binger II Pump Station. The location for the proposed Binger II was in the certified territory of CKenergy Electric Cooperative, Inc., which has exclusive rights to provide electricity in the area pursuant to the Retail Electric Supplier Certified Territory Act codified at 17 O.S. 2011, § 158.21et seq. Relying on the large-load exception to the RESCTA, 17 O.S. 2011, § 158.25 in section 158.25(E) limits the manner or mechanism which OG&E may utilize to provide service under the large-load exception. OG&E and ONEOK appealed, we retained both appeals, and consolidated the cases. We hold that section 158.25(E) allows OG&E to extend its service to large loads in the manner proposed. Therefore, the Commission's order enjoining OG&E is vacated and remanded for proceedings consistent with this opinion.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION; ORDER OF THE OKLAHOMA CORPORATION COMMISSION ENJOINING OG&E IS VACATED; CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION

Clyde A. Muchmore and Melanie Wilson Rughani, Crowe & Dunlevy, PC, Oklahoma City, Oklahoma, for Appellant Oklahoma Gas and Electric Company.

William L. Humes, Oklahoma Gas and Electric Company, Oklahoma City, Oklahoma, for Appellant Oklahoma Gas and Electric Company.

David E. Keglovits, ONEOK Arbuckle II Pipeline, LLC, Tulsa, Oklahoma, for Appellant ONEOK Arbuckle II Pipeline, LLC.

W.A. Drew Edmondson, Riggs, Abney, Neal, Turpen, Orbison, Lewis, Oklahoma City, Oklahoma, for Appellant ONEOK Arbuckle II Pipeline, LLC.

Patricia L. Franz and Daniel P. Boyle, Oklahoma Corporation Commission, Oklahoma City, Oklahoma, for Appellee Oklahoma Corporation Commission.

Brian W. Hobbs, Pain Garland and Hobbs, LLP, Anadarko, Oklahoma, for CKenergy Electric Cooperative, Inc.

Deborah R. Thompson, OK Energy Firm, PLLC, Oklahoma City, Oklahoma, for Appellee CKenergy Electric Cooperative, Inc.

Jana L. Knott, Bass Law, Oklahoma City, Oklahoma, for Appellee CKenergy Electric Cooperative, Inc.

Adam J. Singer and J. Eric Turner, Derryberry & Naifeh, LLP, Oklahoma City, Oklahoma, for Oklahoma Association of Electric Cooperatives.

Jon E. Brightmire and Tom Q. Ferguson, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, Oklahoma, for Amicus Curiae Public Service Company of Oklahoma.

Jack P. Fite, White, Coffey & Fite, P.C., Oklahoma City, Oklahoma, for Amicus Curiae Public Service Company of Oklahoma.

Joann S. Worthington, American Electric Power, Oklahoma City, Oklahoma, for Amicus Curiae Public Service Company of Oklahoma.

Ash Mayfield, Grand River Dam Authority, Tulsa, Oklahoma, for Amicus Curiae Grand River Dam Authority.

Brendon S. Atkinson, Atkinson Law Firm, PLLC, Enid, Oklahoma, for Amicus Curiae Oklahoma Agricultural Cooperative Council.

H. Duane Riffe, Riffe & Associates, Tulsa, Oklahoma, for Amicus Curiae Oklahoma Rural Water Association.

Clinton D. Whitworth, Whitworth, Wilson & Evans, PLLC, Edmond, Oklahoma, for Amicus Curiae Oklahoma State Union of the Farmers Educational and Co-operative Union of America, Inc.

Ericka McPherson, Oklahoma Farm Bureau, Oklahoma City, Oklahoma, for Amicus Curiae Oklahoma Farm Bureau Legal Foundation.

Gurich, J. 

¶1 This retained appeal addresses the interpretation of the "large-load" or "one megawatt" exception to the Retail Electric Supplier Certified Territory Act (RESCTA). The RESCTA, codified at 17 O.S. 2011, § 158.21et seq., divides Oklahoma's unincorporated areas into territories which are served by retail electric suppliers which maintain the "exclusive right to furnish retail electric service to all electric-consuming facilities located within its certified territory." 17 O.S. 2011, § 158.25

The provisions of this act shall not preclude any retail electric supplier from extending its service after the effective date of this act (1) to its own property and facilities, in an unincorporated area, and (2) subject to Section 5 D, to an electric-consuming facility requiring electric service, in an unincorporated area, if the connected load for initial full operation of such electric-consuming facility is to be 1,000 kw or larger.

17 O.S. 2011, § 158.25

Facts & Procedural History

¶2 The underlying facts in this case are not in dispute. In 2018, ONEOK Arbuckle II Pipeline, LLC ("ONEOK") began building a 530-mile long pipeline to transport liquefied natural gas ("NGL") production from the South Central Oklahoma Oil Province and Sooner Trend Anadarko Canadian Kingfisher regions to Mont Belvieu, Texas. The purpose of the pipeline is to pump NGL through a series of electrically-powered pump stations, including the Binger II Pump Station ("Binger II") in Caddo County, Oklahoma. For purposes of the RESCTA, the Binger II is located in the certified territory of CKenergy Electric Cooperative, Inc. ("CKE").17 O.S.2011, § 158.25

¶3 CKE is a rural electric cooperative and a retail electric supplier.17 O.S.2011, § 158.2517 O.S.2011, § 158.25

¶4 Because the large load exception was applicable to the Binger II, ONEOK solicited bids from CKE and OG&E to furnish power to the Binger II. OG&E submitted a bid that was at least $5 million dollars below CKE's,17 O.S.2011, § 158.25

¶5 As CKE's request for relief adversely affected its operations, ONEOK intervened in the case on July 17, 2018. On August 22, 2018, OG&E moved the Commission to dismiss the case. While OG&E's motion to dismiss was pending, the Commission denied CKE's motion for temporary injunctive relief on September 18, 2018. Despite an administrative law judge's recommendation to grant the dismissal, the Commission ultimately denied OG&E's motion to dismiss on November 7, 2018. The Commission held a hearing on the merits of the case on November 14, 2018. On March 12, 2019, the two-member panel of the Commission issued its order, stating the following in part:

IT IS FURTHER ORDERED that OG&E is enjoined from serving or furnishing retail electric service to the Pump Station directly from third-party transmission facilities in violation of the RESCTA.

IT IS FURTHER ORDERED that the Commission declines the request to issue a declaratory ruling as requested by CKenergy.

The Commission also made specific findings that though section 158.25(E) allows an electric retail supplier to "extend" its retail distribution systems, there is a limitation on the manner in which such extension of its services may occur. to mean the lengthening of a retail electric supplier's own retail distribution system.

¶6 In accordance with Article IX, Section 21 of the Oklahoma Constitution, the Commission granted a stay of the March 12, 2019, order until final disposition on appeal and set an appeal bond. ONEOK and OG&E both appealed the Commission's injunction to this Court, and we consolidated the appeals.

Standard of Review

¶7 This Court is asked to review the Commission's order enjoining OG&E from the use of third-party transmission lines. The consolidated appeals of the Commission's decision involves the statutory interpretation of 17 O.S.2011, § 158.25

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. Upon review, the Supreme Court shall enter judgment, either affirming or reversing the order of the Commission appealed from.

Okla. Const. art. IX, § 20. "The trial court's conclusions on issues of law pertaining to the injunctive relief receive a non-deferential de novo appellate review." Western Heights Indep. Sch. Dist. No. I-41 of Okla. County v. State ex rel. Okla. Dep't of Educ., 2022 OK 79518 P.3d 531 Statutory interpretation presents an issue of law, so the Court's de novo review is appropriate. Med. Park Tel. Co. v. Okla. Corp. Comm'n, 2019 OK 21441 P.3d 113see also Dobson Tel. Co. v. Okla. Corp. Comm'n, 2019 OK 27441 P.3d 147Id. See also American Airlines, Inc. v. State ex rel. Okla. Tax Comm'n, 2014 OK 95341 P.3d 56

¶8 Though the Commission may be given deference in certain circumstances, it is not appropriate here. Deference to the Commission is appropriate when the Commission is: (1) acting in its area of expertiseDobson Tel. Co. v. State ex rel. Okla. Corp. Comm'n, 2017 OK CIV APP 16392 P.3d 29517 O.S.2011, § 158.25de novo review is appropriate.

Analysis

¶9 In this case, the Commission held that "extending its service" as used in the large-load exception means that OG&E must physically extend their own distribution lines and may not utilize open-access transmission lines to provide service to the Binger II in CKE's certified territory. OG&E

¶10 In 1971, the RESCTA was enacted to respond to the need for statewide access to reasonably affordable electric service. At the time, for-profit retail electric suppliers were serving more populated, profitable areas while leaving rural areas without adequate access to service.

¶11 The Legislature enacted the RESCTA to achieve very specific goals, enumerating them succinctly as follows:

It is hereby declared to be in the public interest that, in order to encourage the orderly development of coordinated statewide retail electric service, to avoid wasteful duplication of distribution facilities, to avoid unnecessary encumbering of the landscape of the State of Oklahoma, to prevent the waste of materials and natural resources, for the public convenience and necessity and to minimize disputes between retail electric suppliers which may result in inconvenience, diminished efficiency and higher costs in serving the consumer, the state be divided into geographical areas, establishing the unincorporated areas within which each retail electric supplier is to provide the retail electric service as provided in this act.

17 O.S. 2011, § 158.23

Except as otherwise provided herein, each retail electric supplier shall have the exclusive right to furnish retail electric service to all electric-consuming facilities located within its certified territory, and shall not furnish, make available, render or extend its retail electric service to a consumer for use in electric-consuming facilities located within the certified territory of another retail electric supplier; provided that any retail electric supplier may extend its facilities through the certified territory of another retail electric supplier, if such extension is necessary for such supplier to connect any of its facilities or to serve its consumers within its own certified territory.

17 O.S. 2011, § 158.25

The provisions of this act shall not preclude any retail electric supplier from extending its service after the effective date of this act (1) to its own property and facilities, in an unincorporated area, and (2) subject to Section 5 D, to an electric-consuming facility requiring electric service, in an unincorporated area, if the connected load for initial full operation of such electric-consuming facility is to be 1,000 kw or larger.

17 O.S. 2011, § 158.25

¶12 Since 1971, advances in technology, infrastructure, and federal regulation have provided widespread access to electric service and prompted a return to a competitive market.

¶13 A year after the FERC issued Order No. 888, the Oklahoma Legislature enacted the Electric Restructuring Act of 1997. While the Restructuring Act recognized that "[m]onopoly utility regulation has been used as a substitute for competition in the supply of electricity," changes in the marketplace and technology as well as FERC Order No. 888 "have resulted in increased competition in the electric generation industry." 17 O.S. 2011, § 190.217 O.S. 2011, § 190.4see also 17 O.S. 2011, § 190.2117 O.S. 2011, § 158.25

¶14 The respective sides suggest competing interpretations of the phrase "extending its service" as used in the large-load exception. If a statute is subject to more than one interpretation, we look to the plain and ordinary meaning of words in a statute unless the Legislature defines the term. In the Matter of the Income Tax Protest of Hare, 2017 OK 60398 P.3d 317McIntosh v. Watkins, 2019 OK 6441 P.3d 1094

The plain meaning of "extending its service."

¶15 In construing the phrase "extending its service," we first look at the ordinary definition of the words used in the phrase. "Extend" has several meanings including: to spread or stretch forth; to proffer; to make available; or to advance. Merriam-Webster, https://www.merriam-webster.com/dictionary/extend (last visited Dec. 19, 2022). "Its" is defined as of or relating to it or itself. Merriam-Webster, https://www.merriam-webster.com/dictionary/its (last visited Dec. 19, 2022). "Service," in this context, means a facility supplying some public demand. Merriam-Webster, https://www.merriam-webster.com/dictionary/service (last visited Dec. 19, 2022).

Extend is synonymous with furnish, make available, and render.

¶16 "A statute must be read to render every part operative and to avoid rendering parts thereof superfluous or useless." Am. Airlines, Inc. v. Okla. Tax Comm'n, 2014 OK 95341 P.3d 56United States v. Costello, 666 F.3d 1040, 1048 (7th Cir. 2012).

¶17 In its Order, the Commission based its definition of the word "extending" on the premise that if "extend" was interpreted to mean furnish or make available, other words in the RESCTA--"furnish," "make available," and "render"--would be superfluous.

The definition of the phrase "extending its service" must be consistent with the intent of the RESCTA.

¶18 "Extending" requires consideration of the Legislative intent in enacting the RESCTA. In enacting the RESCTA, the Legislature specifically wanted to "avoid wasteful duplication of distribution facilities"; "avoid unnecessary encumbering of the landscape of the State of Oklahoma"; "prevent waste of materials and natural resources"; and "minimize disputes between retail electric suppliers which may result in inconvenience, diminished efficiency and higher costs in serving the consumer." 17 O.S. 2011, § 158.23

¶19 OG&E proposed to utilize WFEC's transmission lines to provide retail electric service to the Binger II. It should be noted, CKE proposed to use the same WFEC transmission lines to provide retail electric service to the Binger II.

Plainly, OG&E is offering its services to the Pump Station. Moreover, in constructing infrastructure to service ONEOK's Pump Station or otherwise availing itself of rights to open-access transmission specifically authorized by the Federal Energy Regulatory Commission ("FERC"), OG&E is making its service available to ONEOK. Likewise, in constructing infrastructure to service ONEOK's Pump Station, OG&E is causing its service and not that of a third party to reach ONEOK's point of electricity consumption.

The Commission held, however, that OG&E could not utilize a third-party's transmission facilities to serve the Binger II.

¶20 On appeal, ONEOK and OG&E assert that the ALJ's conclusion was correct. We agree. The Commission's interpretation runs counter to the RESCTA's policies of reducing wasteful duplication of distribution facilities, encumbering the Oklahoma landscape, and wasting materials. First, if OG&E were compelled to run distribution lines from its nearest distribution facility, it would require the encumbrance of at least nine miles of Oklahoma landscape.

¶21 The Commission asserts that allowing OG&E to have an "island" in CKE's certified territory would be a wasteful duplication of distribution facilities and it therefore violates the RESCTA.wasteful. In order to be wasteful, the duplicate facility would have to be "given to or characterized by useless consumption or expenditure." Dictionary.com, https://www.dictionary.com/browse/wasteful (last accessed Dec. 19, 2022). Both OG&E and PSO, an amici in this case, assert that interconnecting with transmission lines to provide retail electric service to a substation is generally the manner in which large loads are serviced.wasteful duplication, and is therefore not a violation of the RESCTA.

¶22 An analogy may be of assistance here. OG&E is proposing to interconnect with open-access transmission lines that are federally regulated. From that interconnection, OG&E will then run its own distribution lines to a substation and the Binger II. We can liken this to a highway. If OG&E were building a road that led to the Binger II, we would not require them to build a new road if there is already a highway that was closer and more readily available. We would expect OG&E to use the existing highway and build an extension from there. The issue is no different here.

The large-load exception must be given force and effect.

¶23 Cooperatives have exclusive rights in all other spaces, and must be available to service all loads in their territory, even undesirable or unprofitable loads.

¶24 While the RESCTA established certified territories in order to service unincorporated areas, at the same time, the Legislature enacted the large-load exception. The large-load exception specifically states that the RESCTA does not preclude any retail electric supplier from extending its service to a large load. 17 O.S. 2011, § 158.25

¶25 On one hand, CKE contends that "the RESCTA was enacted specifically to ensure rural Oklahomans have access to affordable, reliable, and efficient electric service."

¶26 There is also nothing in the statute that supports the "seams" argument that CKE puts forward. The plain language of the statute provides that any retail electric supplier may provide service to large loads.

If the Legislature wanted to limit the manner and method of providing service under the large-load exception, they could have.

¶27 "We presume that the Legislature expressed its intent and intended what it expressed, and statutes are interpreted to attain that purpose and end, championing the broad public policy purposes underlying them." Estes v. ConocoPhillips Co., 2008 OK 21184 P.3d 518Pentagon Acad., Inc. v. Ind. Sch. Dist. No. 1 of Tulsa County, 2003 OK 9882 P.3d 587

¶28 The Commission and CKE rely on OG&E v. Kay Elec. Co-op, 1974 OK 24519 P.2d 905Kay Electric was decided before the Commission had prepared maps showing each supplier's certified territory. OG&E filed an action with the Commission seeking to service a new facility because OG&E had an existing 24 kilovolt line that was in closer proximity to the facility than Kay Electric's nearest existing 7.2KV line. OG&E asserted that the 24KV line met the definition of an "existing distribution line" as contemplated by 17 O.S. 2011, § 158.25Id. ¶ 1, 519 P.2d at 906. In a prior proceeding, the Commission determined that a 24 KV (or above) line was presumed to be a transmission line and lines of lesser voltage would be presumed to be distribution lines. In order to fit the definition of a distribution line, OG&E relied on evidence that the 24KV line serviced 45 rural customers in addition to the non-rural retail customers. In the specific segment near the new facility, OG&E serviced three customers that took electricity directly from the 24 KV line. The Commission concluded that the disagreement as to the meaning of the term "substantial use" found in §158.22(3)(b) necessitated the establishment of standards to apply to seven specific situations. Id. ¶ 11, 519 P.2d at 907. On appeal, OG&E argued that the Act makes no distinction between distribution and transmission lines but only between retail and wholesale electric service.Id. ¶ 19, 519 P.2d at 909.

¶29 Kay Electric is instructive because the Legislature, well versed on the distinction between transmission and distribution lines, chose not to make a distinction in the exception at issue as to the manner in which large loads may be serviced. Kay Electric also stands for the proposition that one line can be used for different purposes.

¶30 CKE asserts that OG&E's use of wholesale transmission lines excludes it from providing retail electric service.Kay Electric. Pursuant to Kay Electric, the type of line is determined based on the purpose for which the line is used. In this case, while the WFEC line is undisputedly an open-access transmission line delivering wholesale electric energy, there is no indication in the record that OG&E is purchasing electricity for wholesale to a third party. OG&E proposes to use the line only to deliver retail electric service to the Binger II.

¶31 The Commission also argues that the manner in which service may be extended is limited to use of the technology available at the time of the enactment of the RESCTA in 1971. To the extent technology existing at enactment could implicitly limit approved methods of extending service, the Legislature directed it should not: "This act shall be construed liberally. The enumeration of any object, purpose, power, manner, method or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods or things." 17 O.S. 2011, § 158.31

Conclusion

¶32 The Commission's interpretation of 17 O.S.2011, § 158.25

ORDER OF THE OKLAHOMA CORPORATION COMMISSION ENJOINING OG&E IS VACATED; CAUSE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.

Kauger, Winchester, Combs, Gurich and Kuehn, JJ., concur;

Kane, C.J. (by separate writing), Rowe, V.C.J., Darby (by separate writing), J., dissent;

Edmondson, J., disqualified.

FOOTNOTES

Cox Oklahoma Telecom, LLV v. State ex rel. Okla. Corp. Comm'n, 2007 OK 55164 P.3d 150

Oral Roberts Univ. v. Okla. Tax Comm'n, 1985 OK 97714 P.2d 1013Schulte Oil Co., Inc. v. Okla. Tax Comm'n, 1994 OK 103882 P.2d 65prior, firmly established Commission policy" (i.e. longstanding policy), the Court had to decide the case on other grounds). See Oral Roberts Univ. v. Okla. Tax Comm'n, 1985 OK 97714 P.2d 1013See R.R. Tway, Inc. v. Okla. Tax Comm'n, 1995 OK 129910 P.2d 972Oral Roberts, 1985 OK 97Id. ¶ 10, 714 P.2d at 1015 (citation omitted).

Pub. Serv. Co. of Okla. v. State ex rel. Okla. Corp. Comm'n, 2005 OK 47115 P.3d 861Public Service Co., the Court gave deference to the Commission's factual findings, not its legal conclusions. The Court held that a deferential standard was appropriate for this decision "[b]ecause Commission decisions often involve complex issues of economics, accounting, engineering, and other special knowledge." Id. When reviewing the Commission's factual findings, "a presumption of correctness accompanies the Commission's findings in matters it frequently adjudicates and in which it possesses expertise." Id. Here, we are not reviewing the Commission's factual findings in which it possesses expertise, but rather its legal conclusions which are the expertise of the Court. Robinson v. Fairview Fellowship Home for Senior Citizens, Inc., 2016 OK 42371 P.3d 477see also Dobson Tel. Co. v. State ex rel. Okla. Corp. Comm'n, 2017 OK CIV APP 16392 P.3d 295

See also Appellant OG&E's Br. in Chief 1, OG&E v. State ex rel. Okla. Corp. Comm'n, No. 118,857 (Okla. filed Nov. 16, 2020) ("OG&E and other suppliers have been tapping into nearby transmission lines and building dedicated substations to serve such loads for decades.").

The Commission's rulings in at least two companion cases, numbers 119,054 and 119,083, also show that the Corporation Commission has allowed waiver of its perceived violations of the RESCTA. In those cases, the Commission found in favor of OG&E and allowed it to provide service through third-party transmission lines.

See Amicus Curiae Okla. Farm Bureau Legal Found., et al. Br. 14 ("The RECA was a foundational moment in Oklahoma history because it allowed rural Oklahomans to provide for their own electrical needs in the vast stretches of rural Oklahoma where for-profit utilities, like OG&E, refused to serve because it could not make a profit for its investors. . . .").

See Appellant ONEOK Opening Br. 5.

Id. at 4.

Id.

17 O.S. § 158.25

Compare 17 O.S. 2011, § 158.2517 O.S. 2011, § 158.25with 17 O.S. 2011, § 158.2517 O.S. 2011, § 158.25

See R. at 100, 131, 1021. (CKE would serve the Binger II by running distribution lines from the substation located across the road from the Binger II. That substation is served by CKE's distribution lines which connect to WFEC's transmission lines).

See Appellee Comm'n Answer Br. 11.

See Appellee Comm'n Answer Br. 19.

See Amicus Curiae Okla. Farm Bureau Legal Found., et al. Br. 15

17 O.S. 2011, § 158.25shall not preclude any retail electric supplier from extending its service after the effective date of this act . . . subject to Section 5 D, to an electric-consuming facility requiring electric service, in an unincorporated area, if the connected load for initial full operation of such electric-consuming facility is to be 1,000 kw or larger."

17 O.S. 2011, § 158.24Kay Electric, 1974 OK 24519 P.2d 905

17 O.S. 2011, § 158.2217 O.S.2011, § 158.25

17 O.S. 2011, § 158.22

Kay Electric specifically states:

In determining what the legislature meant by * * * the terms `distribution line' and `transmission line' * * * we are guided by § 645.08(1) which provides that, in construing statutes, words and phrases are to be understood according to their common and approved usage. * * *

The state Tax Commission construes transmission lines to be those which take the current from the point of delivery * * * and deliver it in bulk to a point or points for distribution. The interpretation * * * seems to be in accord with the common usage of the terms. * * * The dictionary definitions of the two terms are in accord with the notion that transmission lines are those that transfer current from one place to another but do not divide or apportion it among the consumers, while the distribution lines are engaged only in the latter function. * * *

The distinction between the terms * * * lies in the primary objective and purpose for which the line is used. It is apparent that the primary objective and purpose of the 22,000-volt line in question is the transfer of large quantities of electrical energy in bulk to locations from which it may be distributed or allocated to consumers by means of other lines.

1974 OK 24519 P.2d 905

Supra note 36. The dissent relies on the testimony of CKE's expert, David W. Hedrick, who challenged the Allowable Expenditure Formula used to calculate the cost of OG&E providing service to ONEOK's new load. There is no dispute that OG&E would pay a "tap fee" for the use of WFEC's transmission line. This testimony addressed why OG&E's bid was millions of dollars lower than CKE's bid. However, CKE's expert admitted "A thorough review and analysis of the assumption and cost of service methodology is beyond the scope of this proceeding, but the concerns are legitimate and should be reviewed by the OCC." R. at 938.

17 O.S.2011, § 190.2

Monopoly utility regulation has been used as a substitute for competition in the supply of electricity, but recent changes in the energy marketplace and technology as well as the passage of the National Energy Policy Act of 1992 and implementation of Order No. 888 by the Federal Energy Regulatory Commission have resulted in increased competition in the electric generation industry. The introduction of consumer choice in retail electric energy suppliers will result in market forces rather than regulation determining the cost and quality of electricity for all consumers.

 

 

Kane, C.J., dissenting:

¶1 This dispute involves application of the ''one-megawatt exception'' to the Retail Electric Suppliers Certified Territories Act (RESCTA). The RESCTA provides:

"The provisions of this act shall not preclude any retail electric supplier from extending its service after the effective date of this act (1) to its own property and facilities, in an unincorporated area, and (2) subject to Section 5 D, to an electric-consuming facility requiring electric service, in an unincorporated area, if the connected load for initial full operation of such electric-consuming facility is to be 1,000 kw or larger."

17 O.S. 2011, § 158.25

¶2 The Oklahoma Corporation Commission correctly applied the above statute, and concluded that it was not designed to allow large outside utilities to ''cherry pick'' electrical loads by the use of third party transmission lines located in certified territories. Appellant is not ''extending'' service in such a scenario, it is tapping into the infrastructure built and maintained by the local electric cooperatives. This approach allowed Appellant to forego the expense of building nine to fourteen miles of new lines, which undoubtedly played into the ability of Appellant to undercut the existing rural supplier by five million dollars in the bidding process.

¶3 The statutory construction employed by the majority creates an exception not foreseen by the legislature, and which will serve to burden the same rural community electric suppliers that the RESCTA sought to protect. Given the fact that it was impossible for a retail electric supplier to ''extend its service'' by the use of third-party transmission lines at the time of the drafting of the RESCTA, I find it an unreasonable construction of the Act to allow a competing electric supplier to ''extend'' into this certified zone in such a fashion at this time. I dissent.

FOOTNOTES

 

 

Darby, J., dissenting:

¶1 The issue in this case concerns the construction of a statute. This court must affirm if the Commission "regularly pursued its authority" and its "findings and conclusions . . . are sustained by the law." Okla. Const. art. 9, § 20. Unless otherwise provided, the Oklahoma Constitution provides the standards of review for two categories of cases appealed from the Corporation Commission: 1) those involving violations of Constitutional rights and 2) all other appeals. Okla. Const. art. 9, § 20. Cases involving the first category receive de novo review. Id. All other cases receive a deferential standard of review. Id.; see also Pub. Serv. Co. of Okla. v. State ex rel. Okla. Corp. Comm'n, 2005 OK 47115 P.3d 861

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.

Okla. Cost. art. 9, § 20 (emphasis added). This case does not involve an asserted violation of any constitutional right; consequently, the second standard of review is applicable. The Majority incorrectly equates the more deferential ("[i]n all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence") with "de novo." Maj. Op. at ¶ 7. This the Court should not do. The Majority's illogical mathematical proof leaves much to be desired, especially when this Court has not clearly spoken to what it means for a Commission order to be "sustained by law." The Majority's case cited for the standard of review, originally decided by the Court of Civil Appeals, Dobson Tel. Co. v. State ex rel. Okla. Corp. Comm'n, 2017 OK CIV APP 16392 P.3d 295Id. citing Heffron v. Dist. Court of Okla. Cnty, 2003 OK 7577 P.3d 1069de novo review, the Majority finds an ambiguity, and tries to interpret the statute using plain language alone rather than using recognized canons of construction. The Majority concludes that the statute does not limit the manner or method of providing service under the large-load exception. I respectfully dissent.

¶2 To ensure each unrestricted territory receives adequate energy supplies, the Legislature guaranteed individual small energy companies exclusive authority to provide energy to consumers within their respective territory. The statutes allow a limited exception for providing service to large loads. The Majority overlooks the guiding purpose in creating the territorial monopolies and replaces its judgment for that of the Legislature.

¶3 In reality the language and statutory definitions in 17 O.S. 2011, §§ 158.22

¶4 The Majority cites Oral Roberts Univ. v. Okla. Tax Comm'n, 1985 OK 97714 P.2d 1013ORU), for the rule concerning deference to an agency's interpretation. Maj. Op. at ¶ 8. The rule is as follows: Courts will not disturb the administrative construction of an ambiguous or uncertain statute by the agency charged with its administration so long as such construction is reasonable. ORU, ¶¶ 9-10. But the Majority conflates ORU's holding with the rule. Despite the Majority's position, an agency's interpretation does not need to be long-standing in order to receive deference. See id.

[I]nterpretation or construction of an ambiguous or uncertain statute by the agency charged with its administration is entitled to the highest respect from the courts, specially when the administrative construction is definitely settled and uniformly applied for a number of years. In such cases the administrative construction will not be disturbed except for very cogent reasons, provided that the construction so given was reasonable.

Id. at ¶ 9. There is a type of hierarchy of deference, with long-standing interpretations of regulations given the most controlling weight. See Bell v. Phillips Petroleum Co., 1982 OK 28641 P.2d 1115

When more than one meaning may be attributed to the terms of a regulation, we look to the interpretation given to the regulation by those charged with the duty of executing it. When choosing between two or more possible meanings, controlling weight may be given to the long-continued administrative usage unless it is plainly erroneous or inconsistent with the language. Deference to an agency's interpretation is even more clearly in order when the construction is that of an administrative regulation rather than a statute.

Id. (footnotes omitted). It is true that length of time contributes to the amount of deference, but it does not determine whether deference is owed. In ORU the rule concerning deference to agency interpretation comes from the 1930 case McCain v. State Election Bd., 144 Okl. 85289 P. 759

It is a well settled rule that the contemporaneous construction of a statute by those charged with its execution and application, especially when it has long prevailed, while not controlling, is entitled to great weight and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. The courts are especially reluctant to overturn a long standing executive or departmental construction where great interests have grown up under it and will be disturbed or destroyed by the announcement of a new rule, or where parties who have contracted with the government upon the faith of such construction will be prejudiced.

Id. 762-63 citing 25 Ruling Case Law 1043, ¶ 274.

Ultimately the rule, stated without discussion of additional reasons to differently weigh interpretations (long-standing nature, contemporaneous construction), is well put in the famous United States Supreme Court case Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The rule is summarized as follows:

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

Id. at 2781-82 (footnotes omitted).

¶5 In this case, under the more deferential constitutional standard of review,construction of an ambiguous statute or regulation because the intent of the Legislature is made clear; there is no ambiguity as regular canons of construction lead us to the conclusion that "its service" refers to "retail electric service." § 158.22(4). Thus, the Commission's decision will be upheld so long as it is within the Commission's authority and sustained by law. Okla. Cost. art. 9, § 20.

¶6 The pertinent part of subsection E states that "[t]he provisions of this act shall not preclude any retail electric supplier from extending its service. . . ." § 158.27(E). The question raised has been the construction of "extending its service." Maj. Op. at ¶¶ 7-9 (emphasis added). This Court should deploy well known canons of construction to hold "extending its service" means extending "retail electric service," which specifically excludes wholesale, or "energy furnished by an electric supplier to another electric supplier for resale." § 158.22(4).

¶7 The first canon this Court should use is a semantic canon regarding the ordinary meaning of words. "Words are to be understood in their ordinary, everyday meanings--unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 69 (2012). The Majority recites this canon but fails to properly apply it. See Maj. Op. at ¶ 15 ("If a statute is subject to more than one interpretation, we look to the plain and ordinary meaning of words in a statute unless the Legislature defines the term. In the Matter of the Income Tax Protest of Hare, 2017 OK 60398 P.3d 317Reading Law 73. We are dealing with a technical subject in this case. In reviewing § 158.25, several statutorily defined terms are used throughout. Important to the question presented here, "retail electric supplier" and "retail electric service" are defined by statute at § 158.22.

The term "retail electric supplier" means any person, firm, corporation, association or cooperative corporation, exclusive of municipal corporations or beneficial trusts thereof, engaged in the furnishing of retail electric service.

The term "retail electric service" means electric service furnished to a consumer for ultimate consumption, but does not include wholesale electric energy furnished by an electric supplier to another electric supplier for resale.

§ 158.22(1), § 158.22(4) (emphasis added).

¶8 In § 158.25 the term "retail electric service" is used six (6) times throughout the statute and the shortened term "service" is used twice. Contextually, "[a] word or phrase is presumed to bear the same meaning throughout a text; a material variation in terms suggests a variation in meaning." Reading Law 170. In this case the Court is reviewing one of the two instances in which only "service" is used in the statute. But, using the last-antecedent canon, one that is essentially a rule of grammar, we find that in both instances that "retail electric service" is the antecedent of the legalistic pronoun such, § 158.25(D), and the possessive determiner (type of pronoun) its, § 158.25(E). See Reading Law 144 (the last-antecedent canon provides: "A pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent.") That is, "such" and "its" refer to the earlier antecedents "retail electric service" and "retail electric supplier," respectively. To wit,

D. Except as provided in Section 5 C, no retail electric supplier shall furnish, make available, render or extend retail electric service to any electric-consuming facility to which such service is being lawfully furnished by another retail electric supplier on the effective date of this act, or to which retail electric service is lawfully commenced thereafter in accordance with this section by another retail electric supplier.

E. The provisions of this act shall not preclude any retail electric supplier from extending its service after the effective date of this act (1) to its own property and facilities, in an unincorporated area, and (2) subject to Section 5 D, to an electric-consuming facility requiring electric service, in an unincorporated area, if the connected load for initial full operation of such electric-consuming facility is to be 1,000 kw or larger.

§ 158.25(D), § 158.25(E) (emphasis added).

¶9 As a final effort, the Majority claims that there is no evidence that OG&E is purchasing energy from WFEC by using their transmission lines. Maj. Op. at ¶ 30. Instead of an altruistic WFEC, we actually do have testimonial evidence discussing the methodology for calculating certain costs and payment of "tap fees" from OG&E to WFEC. Testimony of Bruce Breshears on behalf of OG&E discusses a calculation of the annual customer payment. It includes "taking the annual bill (customer charge, energy charge, and demand charge) to get an incremental annual bill less the charges from [sic] paid by OG&E to Western Farmers Electric Cooperative." Report and Recommendation of the Administrative Law Judge p. 19. There is also discussion of a "tap fee" as affecting annual revenue. See Report and Recommendation of Administrative Law Judge p. 29. The tap fee paid by OG&E to WFEC increases as the load increases, which ultimately affects OG&E's bottom line.

¶10 "Extend its service" has a technical meaning defined by the Legislature and should not be read in the ordinary sense. To do so replaces the Legislature's judgment. Additionally, it nullifies in large part the purpose of the monopoly by allowing any retail electric supplier to tap into another's distribution lines or infrastructure to reach into another retail electric supplier's certified territory. It allows any retail electric supplier to cherry pick only the very best, most economical loads to serve. Permitting this crushes retail electric suppliers in their respective certified territories. It also economically damages co-ops in rural Oklahoma and those customers who are served by cost of service electric co-ops. To allow any retail electric supplier to buffet-style pick the most profitable economic loads to serve leaves co-ops as the provider of last resort, drives the cost up for rural customers, and runs completely counter to the desired statutory goals.

¶11 I respectfully dissent.

FOOTNOTES

Dobson Court said "[w]hether this court exercises its 'independent judgment' as to the Commission's statutory interpretation or reviews that interpretation to determine whether it is 'sustained by the law,' our review is the same and no different than the de novo review we employ regarding issues of law in other contexts." Dobson Tel. Co. v. State ex rel. Okla. Corp. Comm'n, 2017 OK CIV APP 16392 P.3d 295

The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and in all appeals involving an asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence.

(emphasis added).

See Report and Recommendation of Administrative Law Judge pp. 17-20.

Id.